**Steve HIRSHON and Diane Rosen, on behalf of themselves and others similarly situated, Plaintiffs,**

v.

**The REPUBLIC OF BOLIVIA, Defendant.**

**No. CIV.A. 95–1957 SSH.**

United States District Court, District of Columbia.

Aug. 19, 1997.

Herbert E. Milstein, Cohen, Milstein, Hausfeld & Toll, Washington, DC, for Plaintiffs.

Alexander P. Starr, Alan D'Ambrosio, Reed, Smith, Shaw & McClay, Washington, DC, for Defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

### I. Background

Before the Court is Salah Turkmani's Motion for Supplemental Order, defendant's opposition, plaintiffs' opposition, Turkmani's re-

---

1. The Court refers to defendant's and plaintiffs' pleadings collectively as those of the settling parties because their arguments are largely the same.

2. Turkmani asserts in a footnote that he could have submitted a motion for a preliminary injunction in his individual suit, Civil Action No. 97–1563 SSH, but did not do so for the convenience of the court and opposing parties. He argues, however, that his present motion satisfies

---

ply, and plaintiffs' surreply.[1] Turkmani moves the Court to supplement its Order of April 4, 1997, which finally approved a settlement agreement between class action plaintiffs and defendant and dismissed with prejudice all claims against defendant. Turkmani, who opted out of the class, requests that the Court supplement its final Order by issuing an order which would preserve Turkmani's alleged property interest in the sinking fund established by defendant with the Bank of New York and freeze a certain portion of any funds remaining in the Bank of New York after the settlement payments have been made. The Court denies the motion for a supplemental order.[2]

On October 18, 1995, plaintiffs Hirshon and Rosen filed a complaint pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), which govern class actions, alleging breach of contract. Plaintiffs asserted that defendant defaulted on its obligation to redeem and pay interest on bonds which it had issued in 1968 and which were owned by plaintiffs and other members of the proposed class.[3] On September 9, 1997, the Court approved a joint stipulation for settlement and a dismissal with prejudice. On December 11, 1996, the Court issued an Order preliminarily approving the proposed settlement, conditionally certifying a settlement class, approving the form and manner of notice to the class, and setting a hearing on the proposed settlement. Notice of the proposed settlement was sent to all known bondholders on January 8, 1997, and was printed in several newspapers on January 15, 1997. The notice issued by the settling parties explained the payment provisions now challenged by Turkmani and specifically noted that they could affect the nonsettling parties' ability to satisfy an individual judgment. Turkmani concedes that he received notice of

---

the showing required for a preliminary injunction. However, Turkmani elected not to file such a motion.

3. On or about October 1, 1968, Bolivia issued 2 1/2%, 2 3/4%, and 3% External Sinking Fund Bonds of 1968 Due on October 1, 1995, and Bond Scrip in the aggregate principal amount of $61,905,800. Compl. at 4. The Court refers to the Bond and Bond Scrip collectively as the bonds.

the terms of the settlement. On February 10, 1997, Turkmani notified class counsel that he was opting out of the conditionally certified class.

On April 4, 1997, the Court held a fairness hearing pursuant to Federal Rule of Civil Procedure 23(e). No objection to the settlement was raised either before or during that hearing. The Court approved the settlement on that date and issued a final Order and judgment of dismissal with prejudice. On July 8, 1997, Turkmani filed an individual suit in this Court seeking damages from Bolivia for breach of contract and simultaneously filed the instant motion for an order supplementing the April 4, 1997, Order.

## II. *Analysis*

Turkmani asserts that the payment provisions of the April 4, 1997, Order infringe on his property rights in certain funds held by defendant and effectively destroy his ability to obtain satisfaction of any judgment which he might obtain against defendant in his individual suit. He argues that the terms of the bonds expressly provide that the money in the sinking fund is to be held in trust for the benefit of the bondholders. He further contends that the expected exhaustion of the sinking fund by the class members' claims under the settlement agreement, and the subsequent return of any remaining supplemental funds to Bolivia, will destroy his ability to obtain satisfaction of any judgment in his favor in his individual suit because the terms of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1609 and 1610(a), severely limit the type of assets which would be subject postjudgment attachment and execution. He asserts that the funds held in the sinking fund are likely to be the only ones which he could attach pursuant to the FSIA. Accordingly, Turkmani argues in essence that the April 4, 1997, Order has caused him plain legal prejudice and that the relief he requests is essential to protect his ability to satisfy any judgment in his favor.

The settling parties argue that Turkmani has no standing to object to or alter provisions of the settlement. They further contend that, even if he had standing, his objections would be untimely since he had notice of the proposed settlement and failed to make any objection prior to his motion. Fi-

nally, they argue that Turkmani failed to comply with Federal Rules of Civil Procedure 59(e) and 60(b), which provide the procedural mechanisms for altering or amending a final judgment. The settling parties note that relief under Rule 59(e) is time-barred because a motion to amend must be made within ten days of the date of the final order and that relief under Rule 60(b) should be denied because Turkmani did not make his motion within a "reasonable time" of the entry of final judgment. The Court denies Turkmani's motion on the grounds that it is untimely and that it fails to comply with either Federal Rule of Civil Procedure 59(e) or 60(b).

### A. *Standing*

Although the question of standing is generally a threshold jurisdictional issue, the Court declines to decide the standing issue and instead decides the motion on the other grounds just noted, that is, that it was untimely and failed to comply with Federal Rules of Civil Procedure 59(e) or 60(b). *See Cross–Sound Ferry Services, Inc. v. I.C.C.,* 934 F.2d 327, 333 (D.C.Cir.1991) (internal citations omitted). "When the merits of a case are clearly against the party seeking to invoke the Court's jurisdiction, the jurisdictional question is especially difficult or far-reaching, and the inadequacies in the record or briefing make the case a poor vehicle for deciding the jurisdictional question, [the Court] may rule on the merits without reaching the jurisdictional issue." *Id.* This Court concludes that the situation at hand fits within this narrow exception to the general proposition that jurisdictional issues must be decided prior to reaching the merits of a motion. *See National Law Ctr. on Homelessness and Poverty v. Kantor,* 91 F.3d 178, 180 (D.C.Cir.1996) (noting that the exception is extremely narrow).

First, as discussed below, Turkmani's motion clearly should be denied on the merits. Second, the question of whether Turkmani has standing is difficult, and its decision might have far-reaching consequences. As noted above, Turkmani opted out of a class-action settlement agreement and is now pursuing an individual action against defendant. If this motion is denied, he may file a motion for a preliminary injunction in his individual

suit—which also is before this Court—in an attempt to gain the same relief requested here. A central issue confronting the Court in deciding such a motion for a preliminary injunction would be whether Turkmani has a property interest in the funds which he would request that the Court protect from dissipation.

■ Similarly, the essential question in determining standing would be whether Turkmani has a valid property interest in the same funds. The sole factor in determining whether Turkmani, as a nonsettling party, has standing to object to a settlement agreement is whether the agreement causes him plain legal prejudice. *See Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C.Cir.1993). Such prejudice occurs when "'the settlement strips the party of a legal claim or cause of action.'" *Id.* at 1093 (internal citation omitted). Turkmani asserts that the settlement agreement causes him plain legal prejudice by stripping him of an asserted property interest in the sinking fund. Consequently, a decision on standing would force this Court to prematurely and unnecessarily determine the validity of Turkmani's asserted property interest in the sinking fund, thus binding the Court in its later consideration of any possible motion for a preliminary injunction in Turkmani's individual suit.

Such a premature decision would be particularly troublesome here because the record before the Court concerning the validity of the asserted property interest is inadequate. It cannot be determined conclusively from the record whether Turkmani actually owns the bonds at all or in what quantity. Furthermore, the settling parties' pleadings regarding Turkmani's asserted property interest arising from a trust are inadequate to determine the validity of Turkmani's asserted property interest.[4] The inadequacy of the record makes decision of the standing issue here unwise and satisfies the third factor of the *Cross–Sound Ferry Services, Inc.* test. Accordingly, the Court declines to decide the question of whether Turkmani has standing, and instead decides the motion on other grounds.

**B. *Timeliness***

■ The Court initially concludes that Turkmani's motion is untimely. Turkmani concedes that he received the notice regarding the proposed settlement which was issued in January 1997. As a result of that notice—which specifically explained the payment provisions of the agreement at issue and their possible effects on the likelihood of obtaining satisfaction of any judgments stemming from individual suits—Turkmani notified the class representatives of his decision to opt out on February 10, 1997. However, despite his current contention that he has standing to object to the settlement agreement, Turkmani never opposed the proposed settlement prior to its approval by the Court, either in writing or at the fairness hearing. Indeed, he chose to wait over three months from the date of the April 4, 1997, Order finally approving the settlement agreement to alert the Court to any objections. Turkmani, having forgone the opportunity to submit an opposition to the settlement agreement or to appear at the fairness hearing, cannot be heard to complain about the effects of a final judgment which he has never opposed until now.[5] Accordingly, the Court

---

4. Furthermore, the Court notes that Turkmani has requested expedited decision of this motion because the settling class members' claims are currently being paid from the sinking fund and he fears that the fund will be quickly exhausted. Accordingly, requesting additional briefing regarding Turkmani's asserted property interest is not feasible.

5. Turkmani requests that the Court treat his motion as a motion to intervene for the limited purpose of obtaining the supplemental order if it concludes that a motion to intervene is a superior procedural mechanism. The Court concludes that a motion to intervene is untimely pursuant to Federal Rule of Civil Procedure 24(a). In determining whether a motion to intervene is

timely, the Court considers "(a) the length of time the intervenor knew or should have known of [his] interest in the case; (b) the prejudice to the original parties resulting from the intervenor's delay; (c) the prejudice, if any, to the intervenor if the motion is denied; and (d) any unusual circumstances." *Stewart v. Rubin*, 948 F.Supp. 1077, 1104 (D.D.C.1996) (internal citations omitted) (denying a motion to intervene submitted late in the settlement process as untimely), *aff'd* 1997 WL 369455 (D.C.Cir.1997). Turkmani knew as early as mid-January or early February the content of the challenged settlement terms and their likely effect on the sinking fund, but failed to act until July 8, 1997. Furthermore, permitting intervention and granting Turkmani's requested relief at this late date

denies Turkmani's motion for a supplemental order as untimely. *See Root v. Ames Dept. Stores, Inc.,* C.A. No. 96–11301–GAO at 2 (D.Mass. July 10, 1997).

### C. *Failure To Comply with Federal Rules of Civil Procedure 59(e) or 60(b)*

■ Furthermore, even if the Court were unwilling to deny the motion simply on the ground of untimeliness, it would deny it on the ground that Turkmani failed to comply with the appropriate Federal Rules of Civil Procedure.

The settling parties argue that he failed to assert or demonstrate compliance with the applicable Rules 59(e) and 60(b). The April 4, 1997, Order dismissed plaintiffs' claims with prejudice and, thus, constituted a final order under 28 U.S.C. § 1291. Finally, the settling parties contend that such a final order can only be amended by the district court under Federal Rules of Civil Procedure 59(e) or 60(b). The settling parties note that Turkmani has not even requested relief pursuant to these rules, much less attempted to satisfy their requirements. Turkmani asserts that his motion is properly characterized as a motion for a supplemental order because he is not objecting to or challenging the terms of the agreement. Claiming that his requested relief would not alter the legal relationships or rights of the settling parties, Turkmani argues that Rules 59(e) and 60(b) do not apply. He also asserts that the Court has the authority to issue the requested supplemental order because it retained jurisdiction to implement, administer, and enforce the settlement agreement. The Court concludes that the April 4, 1997, Order constitutes a final judgment, that Turkmani's requested relief—if granted—would alter the final judgment, and that any attempt to amend or alter that judgment by Turkmani must be made pursuant to Rule 59(e) or Rule 60(b). Turkmani has failed to satisfy the requirements of either rule. Accordingly, for this additional reason, the Court denies Turkmani's motion for a supplemental order.

■ The Court initially concludes that the April 4, 1997, Order constitutes a final judgment despite the Court's limited retention of jurisdiction. Paragraph 11 of the Order states: "The Court reserves jurisdiction, without affecting the finality of this Judgment, over: (a) implementation of the settlement; (b) enforcing and administering this judgment; and (c) other matters related or ancillary to the foregoing." It is well-established that a trial court may retain jurisdiction over the enforcement and administration of a settlement agreement after issuing a final judgment. *See Beckett v. Air Line Pilots Ass'n,* 995 F.2d 280, 286 (D.C.Cir. 1993). The reservation of such limited jurisdiction does not render an otherwise final judgment unfinal. *Id.* (treating the trial court's grant of summary judgment on all counts as a final judgment pursuant to 28 U.S.C. § 1921 even though the district court retained enforcement jurisdiction over the settlement agreement). Thus, the Court concludes that the April 4, 1997, Order was a final judgment.[6]

Turkmani asserts that his requested relief would not affect the legal relationships or rights of the settling parties as set out by the April 4, 1997, Order. Thus, Turkmani argues, his motion cannot be termed a motion to alter or amend subject to either Rule 59(e) or Rule 60(b). Turkmani asserts that the requested relief would only recognize his independent legal interest in the funds in the Bank of New York and would create no prejudice to the settling parties. The settling parties counter that requiring defendant to set aside a certain portion of the fund for the satisfaction of a possible judgment in Turkmani's individual suit clearly alters the terms of the settlement by placing restrictions on the funds designated for payment of

---

would prejudice the settling parties by delaying the completion of settlement payments and undermining the finality of the April 4, 1997, Order. Finally, any prejudice to Turkmani from the denial of a motion to intervene is the result of his own decision to opt out of the class and to refrain from timely objecting to the settlement. Additionally, the extent of prejudice to Turkmani is unclear since he has not addressed whether he could pursue a claim in Bolivia or whether he is limited to his individual action in this Court. Accordingly, even were the Court to treat Turkmani's motion as a motion to intervene, it would deny the motion as untimely.

**6.** The Court notes that Turkmani does not appear to contest the characterization of the April 4, 1997, Order as a final order.

claims pursuant to the settlement. They contend that the requested relief would delay the payment of claims made by class-members because the existing funds are insufficient to pay the expected claims while reserving the portion sought by Turkmani. Accordingly, defendant would have to transfer additional money into the sinking fund, thus delaying the payment of claims. Furthermore, defendant would be prejudiced by its inability to use the frozen funds to satisfy its obligations under the settlement agreement. As noted, defendant would have to use other funds—to replace those held in limbo by the proposed supplemental order—to satisfy the class members' claims, and thus would have less money at its disposal for other uses. The Court concludes that Turkmani's requested relief would significantly affect the terms of the settlement agreement and would prejudice the settling parties. Accordingly, the Court concludes that Turkmani's motion may be accurately characterized as a motion to alter or amend a final judgment.

In light of that determination, relief from the final judgment is only available to Turkmani pursuant to either Rule 59(e) or Rule 60(b). However, Turkmani failed explicitly to assert either of these rules. Even if the Court chose to treat Turkmani's motion for a supplemental order as a motion for relief pursuant to Rules 59(e) or 60(b), the Court would deny the motion for Turkmani's failure to satisfy the requirements of those rules.

Relief pursuant to Rule 59(e) is clearly time-barred. That rule requires a motion for relief to be filed within ten days of the entry of the final judgment. Here, the final judgment was issued on April 4, 1997, and Turkmani's motion was not filed until July 8, 1997.

Relief also is unavailable pursuant to Rule 60(b), which requires that a motion thereunder be made within a reasonable time of the entry of a final judgment. *See Security Mut. Cas. Co. v. Century Cas. Co.,* 621 F.2d 1062, 1068 (10th Cir.1980) (denying a Rule 60(b) motion which was submitted three months after final judgment had been entered with no explanation for the delay in filing). The Court considers the duration of and reason for Turkmani's delay in filing the pending motion, the prejudice to the settling parties which would be caused if the judg-

ment were to be amended, and the injury to the judicial system's and the parties' finality interests in determining whether Turkmani's motion complies with the time constraints of Rule 60(b). *See United States v. Real Prop. Known as 429 South Main St.,* 906 F.Supp. 1155, 1164 (S.D.Ohio 1995).

Turkmani was aware of the proposed settlement agreement's provisions and their likely effect on his claimed interest in the sinking fund as early as mid-January, and certainly by mid-February when he opted out of the class. Yet he failed to make any objection prior to final judgment regarding the settlement's adverse impact on his interests. Indeed, Turkmani waited for more than three months after the final judgment to make any objection to the settlement agreement. Turkmani's only justification for the delay is that, during this six-month period, he was still considering opting back into the class. Turkmani's desire to keep his options open for as long as possible is certainly not a sufficient reason to excuse his delay in filing his motion. This is especially true in light of the strong policy in favor of encouraging settlement. *See Mayfield,* 985 F.2d at 1092 (noting the court's particular interest in encouraging settlement in class actions because of their usual complexity and length); *Gould v. Alleco, Inc.,* 883 F.2d 281, 284 (4th Cir.1989) (stating that settlements are to be encouraged), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990). To permit an objection at this late date would delay the administration of the settlement agreement and inject unwelcome uncertainty into both current and future settlement proceedings. The Court therefore concludes that Turkmani's request for relief does not comply with requirements of Rule 60(b) because it was not made within a "reasonable time" of the entry of the final judgment.

## III. *Conclusion*

In sum, the Court denies Turkmani's motion on the grounds of untimeliness and failure to comply with Federal Rules of Civil Procedure 59(e) or 60(b). An appropriate order accompanies this opinion.

### ORDER

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that Salah Turkmani's Motion for Supplemental Order is denied.

SO ORDERED.