[Cite as *Moccabee v. Bashore*, 2021-Ohio-4345.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Layne Moccabee

     Appellant

v.

Lauren Bashore, et al.

     Appellees

Court of Appeals No.  L-21-1016

Trial Court No.  CI0201701355

**DECISION AND JUDGMENT**

Decided:  December 10, 2021

* * * * *

Steven L. Crossmock and Stevin J. Groth, for appellant.

Terrence J. Kenneally and Sean M. Kenneally, for appellees.

* * * * *

**MAYLE, J.**

{¶ 1} Plaintiff-appellant, Layne Moccabee, appeals the January 4, 2021 judgment of the Lucas County Court of Common Pleas, denying her motions for relief from judgment in favor of defendants-appellees, Lauren Moccabee and Thomas Moccabee. For the following reasons, we affirm the trial court judgment.

## I. Background

{¶ 2} On February 1, 2015, Lauren Bashore ("Lauren") operated a vehicle that was involved in an automobile accident, allegedly caused by her negligence. Layne Moccabee was a passenger in Lauren's vehicle. She and three other passengers were seriously injured in the accident.

{¶ 3} Lauren was insured by USAA, and the vehicle she was driving was insured under a USAA policy issued to her father, Thomas Bashore ("Thomas"). The USAA claims representative assigned to the case informed Moccabee's attorney that each policy carried liability limits of $25,000 per person and $50,000 per accident, for total combined coverage of $50,000 per person and $100,000 per accident. The combined claims of the four injured passengers exceeded these limits.

{¶ 4} Moccabee filed suit against Lauren and Thomas. The lawsuit was settled on August 27, 2017, for $25,000, and the case was dismissed on November 1, 2017, by way of a stipulated dismissal with prejudice that stated as follows:

> We, the undersigned attorneys for the respective parties hereto, do hereby stipulate that this case is settled and dismissed, with prejudice, against all parties. Notwithstanding this dismissal, the court retains jurisdiction over this case for the purpose of enforcing the terms of the settlement, including the resolution of any liens. Costs to be paid by Defendant. This entry terminates the case. Notice by the Clerk is hereby waived.

2.

This stipulation of dismissal was signed by the parties' attorneys and the court.[1]

{¶ 5} Moccabee later learned that a third USAA policy existed with limits of $500,000 per person and $1 million per accident—issued to Lauren's grandparents, Anne and Barry Bashore, with whom Lauren lived—which may have provided additional coverage for the accident. On October 15, 2020, almost three years after the stipulation of dismissal was entered, Moccabee filed a motion for relief from judgment under Civ.R. 60(B)(3), seeking to vacate the November 1, 2017 stipulation of dismissal on the basis that USAA employees engaged in fraud, misrepresentation, or other misconduct by failing to inform her of the third policy. Understanding that a motion under Civ.R. 60(B)(3) must be filed within one year of the judgment it seeks to vacate, Moccabee emphasized that the stipulation of dismissal expressly authorized the trial court to retain jurisdiction over the case for purposes of enforcing the terms of the settlement and resolving liens. She insisted that her motion was filed within a year of the liens being resolved, and was, therefore, timely. She also argued that her claim was timely because USAA knew within a year of settling her claims that this additional coverage existed.

{¶ 6} Lauren and Thomas countered that Civ.R. 60(B)(3) applies only where the alleged fraud has been committed by a party. Because Moccabee alleged fraud by USAA representatives—third parties—she could not prevail under Civ.R. 60(B)(3). They also

---

[1] Under Civ.R. 54(A), "judgment" means "a written entry ordering or declining to order a form of relief, signed by a judge, and journalized on the docket of the court." Given that the trial court signed the stipulation of dismissal here, it also constitutes a "judgment."

3.

insisted that Moccabee's motion was untimely because it was not filed within a year of the stipulation of dismissal.

{¶ 7} Moccabee replied that Civ.R. 60(B)(5) provides an additional basis to vacate the judgment because the fraud was committed by a third party to the litigation and because a fraud had been committed on the court. Unlike motions filed under Civ.R. 60(B)(3), a motion filed under Civ.R. 60(B)(5) need not be filed within one year of the judgment sought to be vacated. Moccabee argued that even if there was a one-year deadline for filing her motion, the doctrine of equitable tolling should bar USAA from asserting the deadline because it falsely represented that only two policies applied to the loss, and those misrepresentations induced Moccabee to settle her claims. She again argued that her October 15, 2020 motion was filed within one year of the liens being resolved, therefore, her motion was timely.

{¶ 8} In addition to her reply brief, Moccabee filed a second motion for relief from judgment under Civ.R. 60(B)(1) and (5), for the same reasons explained in her reply brief.

{¶ 9} In a judgment journalized on January 4, 2021, the trial court denied Moccabee's motions. As to her first motion, the court determined that Moccabee was precluded from seeking relief under Civ.R. 60(B)(1)-(3) because her motion was not filed within one year of the judgment at issue. It rejected Moccabee's equitable tolling argument, finding that the doctrine is inapplicable in the context of a Civ.R. 60(B) motion. And while it agreed that a third party's fraud may provide a basis for obtaining

4.

relief from judgment under Civ.R. 60(B)(5), it emphasized that the fraud must be clear and uncontroverted. It found that there had been no affirmative misrepresentation by the claims representative here, his omission concerning the potential applicability of the third USAA policy was "ambiguous at best," and he may have simply been unaware that a third policy was potentially applicable to the claim. In any event, the court held, insurers owe no duty to third-party claimants.

{¶ 10} As to Moccabee's second motion for relief from judgment, the trial court noted that the second motion mainly restated arguments contained in the briefing of her first motion. It found that the second motion was barred by the doctrine of res judicata because it raised grounds and facts that could have been raised in the first motion.

{¶ 11} Moccabee appealed. She assigns the following errors for our review:

I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF WHEN IT HELD THAT THE PLAINTIFF'S MOTION WAS NOT TIMELY FILED AND SHE COULD NOT SEEK RELIEF FROM JUDGMENT UNDER CIVIL RULE 60(B)(1-3).

II. THE TRIAL COURT ERRED WHEN IT HELD THAT APPELLANT'S SECOND MOTION FOR REL[IE]F FROM JUDGMENT WAS BARRED BY THE DOCTRINE OF RES JUDICATA.

## II. Law and Analysis

{¶ 12} Moccabee's two assignments of error challenge the trial court's findings that (1) her first motion for relief from judgment was untimely, and (2) her second motion

for relief from judgment was barred by the doctrine of res judicata. We consider each of her assignments in turn.

## A. Moccabee's First Motion

{¶ 13} In her first assignment of error, Moccabee argues that her first motion was timely-filed under Civ.R. 60(B)(1)-(3) because the judgment from which she sought relief—the November 1, 2017 stipulation of dismissal—was not a final judgment. She insists that the stipulation of dismissal did not become final until the terms of the settlement agreement were fulfilled and all liens were resolved. She maintains that USAA still owes Moccabee and a lienholder a total of $8,333.33, so the terms of the settlement have not been fulfilled, and the judgment was not final. Confusingly, she claims at the same time that the liens here were resolved on October 16, 2019, and her motion was filed within one year of that date, therefore, her motion was not time-barred.

{¶ 14} Lauren and Thomas respond that Moccabee raises arguments on appeal that were not raised in the trial court. They maintain that Moccabee failed to offer operative facts—affidavits, depositions, discovery responses, or other sworn testimony—in support of her position. And they contend that Moccabee's motion was untimely because it was not filed within one year of the November 1, 2017 stipulation of dismissal. They claim that even if it was timely-filed, Moccabee failed to present clear and convincing evidence of fraud perpetrated by a party to the litigation, as required for relief under Civ.R. 60(B)(3).

6.

{¶ 15} Under Civ.R. 60(B), a party may be relieved from a final judgment for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B);

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party;

* * *

(5) any other reason justifying relief from the judgment.

To prevail on a motion for relief from judgment under Civ.R. 60(B), the moving party must demonstrate: "(1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ. R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time." *GTE Automatic Electric, Inc. v. Arc Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus. Where the grounds for relief are Civ.R. 60(B)(1), (2) or (3), the motion for relief from judgment must be filed "not more than one year after the judgment, order or proceeding was entered or taken." Civ.R. 60(B).

{¶ 16} We review a trial court judgment denying a motion for relief from judgment under an abuse of discretion standard. *Kerger & Hartman, LLC v. Ajami*, 6th Dist. Lucas No. L-16-1135, 2017-Ohio-7352, ¶ 13. An abuse of discretion connotes that

7.

the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 17} Although never cited in the trial court, Moccabee contends that under *Infinite Security Solutions., L.L.C. v. Karam Properties, II, Ltd.,* 143 Ohio St.3d 346, 2015-Ohio-1101, 37 N.E.3d 1211, if a trial court in its judgment entry of dismissal retains jurisdiction to enforce a settlement agreement, the judgment is not final until all the terms of the dismissal and settlement agreement have been fulfilled.

{¶ 18} The appeal in *Infinite Security Solutions* stemmed from two cases filed in the Lucas County Court of Common Pleas, both of which involved claims that arose as a result of a fire at an apartment complex in Toledo. The first case was filed by Infinite against the property manager, Karam, and the property owner, Toledo Properties, to recover for security services that it provided at the apartment complex. Karam counterclaimed against Infinite to recover for damages from the fire that were not covered by insurance. The second case was filed against Infinite by Travelers, Karam and Toledo Properties' insurer. Travelers alleged that as a result of the fire, it paid $8.9 million, and it claimed that it was subrogated to its insureds' rights against Infinite.

{¶ 19} The two cases were consolidated. During a pretrial settlement conference, the parties announced that they had reached a settlement. They told the court that they had agreed that Infinite would pay a fixed sum to settle all the claims against it, but they explained that they had not yet resolved the issue of how to split the settlement money.

8.

The parties told the court that they would attempt to resolve that issue but would submit it to the trial court for resolution if they were unable to agree.

{¶ 20} Lucas County's local court rules required litigants to submit a dismissal entry within 30 days after settling a case. If no entry was submitted, the judge could order the case dismissed for want of prosecution or file an order of settlement and dismissal and assess costs. Nevertheless, just one week after the parties agreed to settle, the court sua sponte filed a dismissal entry, indicating that the parties had represented that they had resolved their differences, dismissing the case without prejudice, and allowing the parties 30 days to file a dismissal entry.

{¶ 21} Travelers moved to set aside the dismissal entry under Civ.R. 60(B). It argued that the dismissal was a mistake because the settlement was not finalized and the parties were unable to resolve the issue of priority and apportionment of the settlement proceeds. Travelers asked the trial court to vacate the dismissal entry and reopen the case to decide those issues. Karam and Toledo Properties opposed Travelers' motion, arguing that the trial court lacked jurisdiction because it arose after the final settlement agreement. Infinite moved to enforce the settlement agreement and for an order permitting it to pay the settlement amount to the court.

{¶ 22} Following a hearing on Travelers' motion, the trial court held that its dismissal was conditional, it retained jurisdiction to determine the priority issue without vacating the dismissal entry, and Travelers' claim to the settlement funds had priority.

9.

The court ordered Infinite to pay all but $25,000 of the settlement funds to Travelers and ordered the parties to execute a settlement agreement and release within 30 days.

{¶ 23} Karam and Toledo Properties appealed to this court. They argued, inter alia, that the trial court lacked subject-matter jurisdiction after dismissing the cases and lacked authority to decide the priority issue.

{¶ 24} We agreed that the trial court lacked jurisdiction to determine the priority issue because of its prior dismissal. We held that the court in its original dismissal entry had unequivocally and unconditionally dismissed the action—and no longer had jurisdiction over the matter—because it did not incorporate the terms of the parties' settlement or expressly retain jurisdiction to enforce the settlement agreement. Travelers appealed to the Ohio Supreme Court.

{¶ 25} The Ohio Supreme Court acknowledged that many counties' local court rules permit counsel a stated period of time to submit a final dismissal entry after settlement and provide that if counsel fails to do so, the trial court may file its own dismissal entry. It recognized that under this procedure, a case remains pending until the dismissal entry is filed, either by the parties or the court. The court was supportive of that procedure and observed that the delay provided for in the rules allows the parties to finalize and execute their agreement and obtain necessary releases while the trial court retains jurisdiction over the parties and their pending claims.

{¶ 26} The Ohio Supreme Court also recognized that trial courts often distinguish between conditional and unconditional dismissals. It explained that that these courts

10.

have found that a "conditional" dismissal occurs when the entry states that the court's jurisdiction will be resurrected upon the happening of a stated event, such as a party's failure to comply with a settlement agreement, whereas an "unconditional" dismissal contains "no triggering event and deprives the court of jurisdiction to enforce a settlement agreement." *Id.* at ¶ 19. The court acknowledged that this distinction between a dismissal as "conditional" or "unconditional" likely evolved from Ohio Supreme Court authority stating that a trial court loses authority to proceed when it "unconditionally" dismisses a case. However, it clarified that the Ohio Rules of Civil Procedure do not provide for "conditional" dismissals. Rather, Civ.R. 41 provides for voluntary or involuntary dismissals and dismissals with or without prejudice. The court, therefore, rejected the notion of a "conditional" dismissal.

{¶ 27} The court recognized, however, that Ohio appellate courts have accepted that a trial court may, in some circumstances, dismiss an action while retaining authority to enforce an underlying settlement agreement. The court approved of this practice and explained that the retention of jurisdiction may be achieved by incorporating the settlement agreement into the dismissal entry, thereby allowing the court to enforce the terms of the agreement as its judgment.

{¶ 28} But the court also acknowledged that parties may not want to publicly disclose the terms of their settlement. In determining how a court should express its intention to retain jurisdiction under such circumstances, the court observed two principles that must be considered: (1) "a court speaks only through its journal entries,"

11.

so "[n]either the parties nor a reviewing court should have to review the trial court record to determine the court's intentions"; and (2) "[t]he principle of finality 'requires that there be some end to every lawsuit,'" so "[a]bsent a clear indication that the trial court intends to retain jurisdiction to enforce the parties' settlement agreement, parties must be entitled to rely on the finality of the court's action * * *." *Id.* at ¶ 29-30. Consistent with these principles, the court concluded that as an alternative to incorporating the terms of a settlement agreement as a means of retaining authority, a trial court may simply—but expressly—state that it retains jurisdiction to enforce the settlement agreement.

{¶ 29} In sum, as articulated in its syllabus, the Ohio Supreme Court held that "[a] trial court has jurisdiction to enforce a settlement agreement after a case has been dismissed only if the dismissal entry incorporated the terms of the agreement or expressly stated that the court retained jurisdiction to enforce the agreement." *Id.* at syllabus.

{¶ 30} Applying this principle to the dispute between Infinite, Travelers, Karam, and Toledo Properties, the Ohio Supreme Court agreed with this court that the trial court lacked jurisdiction to enforce the terms of the parties' settlement agreement or to conduct any further proceedings in the matter because its dismissal entry did not incorporate the terms of the parties' agreement or expressly state that it retained jurisdiction to enforce the agreement. Accordingly, the court found, the trial court erred by resolving the priority issue, and it remanded the matter to the trial court so that it could consider Travelers' Civ.R. 60(B) motion.

12.

{¶ 31} Moccabee cites *Infinite Security Solutions* for the proposition that where a trial court expressly states in its dismissal entry that it retains jurisdiction to enforce a settlement agreement, that judgment does not become final until the terms of the settlement agreement have been satisfied. She argues that because the dismissal entry here indicated that the court retained jurisdiction "for the purpose of enforcing the terms of the settlement, including the resolution of any liens," and because the liens here have not been resolved, the stipulation of dismissal is not a final judgment.

{¶ 32} We see at least two problems with Moccabee's argument. First, if the stipulation of dismissal is not a final judgment, then a Civ.R. 60(B) motion was not the appropriate mechanism for seeking relief and the denial of her motion was an interlocutory order that was not final and appealable. *See Fifth Third Bank v. Rose*, 4th Dist. Gallia No. 07CA8, 2008-Ohio-3919, ¶ 12 (explaining that Civ.R. 60(B) is not the proper procedural device to employ when seeking relief from a non-final order and the denial of such motion was an interlocutory order). If Moccabee is correct that the judgment was not final, we would be forced to dismiss her appeal for lack of a final, appealable order.

{¶ 33} Second, *Infinite Security Solutions* holds only that a court may retain jurisdiction for the limited purpose of enforcing a settlement agreement following dismissal. It does not stand for the proposition that Moccabee attributes to it: that *a judgment is not final* if the court retains jurisdiction. We do not believe that Moccabee's interpretation is a logical extension of *Infinite Security Solutions*. The trial court's

13.

retention of jurisdiction to enforce a settlement agreement does not *prevent* a judgment entry of dismissal from becoming final; it simply permits further involvement by the trial court *despite* entry of a final judgment of dismissal. At least one Ohio case supports our interpretation. *See Connolly v. Studer*, 7th Dist. Carroll No. 07 CA 846, 2008-Ohio-1526, ¶ 22 ("The April 17, 2006 journal entry that dismissed the case based upon the settlement and retained jurisdiction to enforce the settlement, was a final appealable order as it dismissed the case."). And federal case law supports our view as well. *See Futernick v. Sumpter Tp.,* 207 F.3d 305, 310 (6th Cir.2000) (concluding that district court's retention of jurisdiction to enforce terms of a settlement agreement did not render otherwise final judgment non-final); *Hirshon v. Republic of Bolivia*, 979 F.Supp. 908, 913 (D.D.C.1997) ("It is well-established that a trial court may retain jurisdiction over the enforcement and administration of a settlement agreement after issuing a final judgment. * * * The reservation of such limited jurisdiction does not render an otherwise final judgment unfinal.").

{¶ 34} The final judgment here was the November 1, 2017 stipulation of dismissal. It was—expressly—a dismissal with prejudice terminating the case. The court's retention of jurisdiction "for the purpose of enforcing the terms of settlement, including the retention of any liens," did not render the judgment non-final; it simply provided a mechanism for the parties to reengage the trial court for the limited purpose stated in the entry. Because Moccabee filed her motion almost three years after the judgment was journalized, her motion was untimely under Civ.R. 60(B)(1)-(3).

14.

{¶ 35} Finally, the one-year deadline for filing a motion for relief from judgment under Civ.R. 60(B)(1)-(3) began to run the day that final judgment was journalized—not the date the liens were resolved. So even if Moccabee resorts to her alternative argument (that the liens were resolved October 16, 2019), her argument still fails because her motion was not filed within one year of the November 1, 2017 stipulation of dismissal.

{¶ 36} Accordingly, we find Moccabee's first assignment of error not well-taken.

### B. Moccabee's Second Motion

{¶ 37} In her second assignment of error, Moccabee argues that the trial court erred when it concluded that her second motion for relief from judgment was barred under the doctrine of res judicata. She emphasizes that her second motion was filed along with her reply brief in support of her first motion. She claims that res judicata does not apply because there was never a final order or decision denying her first motion for relief from judgment. She insists that her motion should have been granted under Civ.R. 60(B)(5) because she offered operative facts in support of her claim that USAA representatives intentionally provided false information concerning the extent of liability coverage applicable to her claim. She maintains that this would have become clear to the court had she been permitted a hearing on her motion.

{¶ 38} Lauren and Thomas respond that res judicata prevents a party from asserting a second motion for relief from judgment based upon the same facts as the first motion, especially where the insufficiency of the first motion was the result of the party's own inadvertence. She maintains that the exact same allegations were made in

15.

Moccabee's first and second motions for relief from judgment, therefore, the trial court properly denied her second motion as barred by the doctrine of res judicata. Lauren and Thomas further claim that the fraud Moccabee alleged here did not constitute a fraud on the court, therefore, Civ.R. 60(B)(5) is inapplicable.

{¶ 39} "As a general rule, res judicata precludes the successive filings of Civ.R. 60(B) motions for relief from a valid, final judgment when based upon the same facts and same grounds or based upon grounds that could have been raised in the prior motion." *Hillman v. Edwards,* 10th Dist. Franklin No. 14AP-496, 2014-Ohio-5667, ¶ 14, citing *See GMAC Mtge., L.L.C. v. Lee,* 10th Dist. Franklin No. 11AP-796, 2012-Ohio-1157, ¶ 18; *Chase Manhattan Bank v. Jenkins,* 10th Dist. Franklin No. 06AP-1192, 2007-Ohio-3622, ¶ 24. "Under the doctrine of res judicata, [a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." (Internal citations and quotations omitted.) *Hughes v. Calabrese*, 95 Ohio St.3d 334, 2002-Ohio-2217, 767 N.E.2d 725, ¶ 12. An action will be barred by res judicata where a court finds the following four factors: "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." (Citations omitted.) *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 84.

16.

{¶ 40} Here, the trial court had not yet ruled on Moccabee's first Civ.R. 60(B) motion when she filed her second Civ.R. 60(B) motion. We, therefore, conclude that there was no prior final, valid decision on the merits, and the doctrine of res judicata did not bar Moccabee's second motion.

{¶ 41} Having said this, while the trial court denied Moccabee's second motion on the basis of res judicata, it nevertheless addressed and disposed of the issues raised in her second motion because she made those same arguments in her reply in support of her first motion. We review the trial court's resolution of those arguments.

{¶ 42} The trial court held that the fraud alleged here—fraud committed by *someone other than* an adverse party—may form the basis for relief under Civ.R. 60(B)(5). It agreed with Moccabee that because USAA was not an adverse party, but rather, the insurer of an adverse party, Civ.R. 60(B)(5) *may* apply. But the court emphasized that the grounds to invoke relief under this provision must be substantial.

{¶ 43} Moccabee's allegations of fraud arose from USAA's pre-litigation letter to Moccabee's then-attorney, disclosing the coverage limits on policies issued to Lauren, the driver, and her father, the owner of the vehicle—it was silent as to the policy maintained by Lauren's grandparents, with whom she lived. The court observed that there were several explanations for the omission: (1) Moccabee's theory—the claims representatives had attempted to conceal the existence of the third policy; (2) the claims representative was unaware that a third policy was potentially applicable to the claim; or (3) a mere oversight. Because Moccabee provided no documentation to substantiate her

17.

belief that USAA intentionally concealed the existence of the third policy, the court concluded that Moccabee could not prevail under Civ.R. 60(B)(5). Important to its conclusion was the fact that an insurance company owes no independent duty to an injured party, and, therefore, owed no duty to disclose here—an element required to prevail on a claim for fraudulent concealment.

{¶ 44} Moccabee argues that it is inconceivable that the claims representative did not know that the third policy existed given that Lauren and her grandparents shared the same address. And while acknowledging that fraudulent intent cannot be assumed, Moccabee argues that it can be inferred from certain facts unless a contrary intent appears from all the evidence. She maintains that while USAA may not have owed a duty to disclose, once it decided to do so, it assumed a duty to disclose complete and accurate information. Moccabee insists that if the issue proceeded to a hearing, it would become clear that USAA made a conscious and knowing decision not to disclose the existence of the third insurance policy. She cautions that if she is denied relief from judgment, it will require every injured party to file a lawsuit because they will be unable to rely on pre-litigation representations made by insurance companies.

{¶ 45} Ignoring the trial court's conclusion that Civ.R. 60(B)(5) may apply to the fraud of a third-party and neglecting to directly address Moccabee's arguments under this subsection, Lauren and Thomas focus on cases that hold that Civ.R. 60(B)(5) may apply to allegations of *fraud on the court*. They maintain that fraud on the court is perpetrated by officers of the court. Because no attorney or representative knowingly made any false

18.

statements to the court on their behalf, Lauren and Thomas insist that Moccabee cannot obtain relief under Civ.R. 60(B)(5).

{¶ 46} Setting aside whether or not the misrepresentations of an insurance company can support a motion for relief from judgment under Civ.R. 60(B)(5), we must conclude that Moccabee cannot prevail on her motion because she has failed to present operative facts supporting her motion. "Ohio courts have set certain standards to be observed concerning * * * the procedural sufficiency of a Civ. R. 60(B) motion." *Jim Wing Plumbing Co. v. Brown*, 6th Dist. Lucas No. L-85-014, 1985 WL 7561, *2 (July 26, 1985). A motion filed under Civ.R. 60(B) must contain allegations of operative facts supporting the motion. Many courts—including this court—require that those allegations of operative facts "'must be of such evidentiary quality as affidavits, depositions, answers to interrogatories, written admissions, written stipulations, or other sworn testimony.'" *Id.,* citing *E. Ohio Gas Co. v. Walker*, 59 Ohio App.2d 216, 394 N.E.2d 348 (8th Dist.1978). *But see Masters Tuxedo Charleston, Inc. v. Krainock*, 7th Dist. Mahoning No. 02 CA 80, 2002-Ohio-5235, ¶ 13 (concluding otherwise). "'Unsworn allegations of operative facts * * * are not sufficient * * *.'" *Jim Wing Plumbing Co.* at *2, citing *E. Ohio Gas Co.* at 216.

{¶ 47} Here, Moccabee promises that a hearing on her motion will reveal that USAA made a conscious and knowing decision not to disclose the existence of the third insurance policy. But if she had evidence of USAA's intentional misrepresentations, it was incumbent on her to present this evidence in her Civ.R. 60(B) motion. The exhibits

19.

attached to her motion—an unauthenticated declaration page, release, letter from USAA, letter from Ohio's Department of Medicaid, and email from Moccabee's former attorney—do not demonstrate fraud. In fact, even setting aside her obligation to proffer evidentiary-quality materials in support of her motion, Moccabee wholly fails to explain how she intends to prove that USAA consciously and knowingly decided not to disclose the existence of the third policy. We, therefore, agree with the trial court that Moccabee failed to present operative facts entitling her to relief.

{¶ 48} Finally, we understand Moccabee's position that if injured persons are not able to rely on insurers' pre-litigation representations, it could force claimants to file lawsuits in order to ensure the information they have received is reliable. However, in this case a lawsuit *was* filed, and Moccabee could have served discovery requests to ensure that all potentially applicable policies of insurance had been disclosed. Because she failed to avail herself of the discovery process, we decline to address how this decision may impact injured persons who settle their claims short of filing suit.

{¶ 49} In sum, we find Moccabee's second assignment of error well-taken insofar as we find that the trial court erred in concluding that her second Civ.R. 60(B) motion was barred by res judicata. We nevertheless affirm the trial court's denial of her second motion because Moccabee failed to set forth operative facts in support of her contention that USAA fraudulently induced her into settling her claims. *See P.J.'s Corrugated, Inc. v. Kerr Const. Co.,* 6th Dist. Fulton No. F-10-018, 2011-Ohio-279, ¶ 11, citing *Johnson v. Am. Family Ins.,* 160 Ohio App.3d 392, 827 N.E.2d 403, 2005-Ohio-1776, ¶ 29 (6th)

20.

("[I]f the trial court's judgment is correct for reasons other than those stated by the court, it is not prejudicial to an appellant and the judgment must be affirmed."); *Cross v. Wabash-Lagrange Steel*, 6th Dist. Lucas No. L-84-422, 1985 WL 7104, *3 (Apr. 26, 1985) ("[E]ven if the reasons are wrong, the judgment should be affirmed if correct for other reasons.").

### III. Conclusion

{¶ 50} We agree with the trial court that Moccabee's first Civ.R. 60(B) motion—filed under Civ.R. 60(B)(3)—was untimely because it was not filed within one year of the November 1, 2017 stipulation of dismissal. Although the trial court retained jurisdiction "for the purpose of enforcing the terms of settlement, including the retention of any liens," this did not render the judgment non-final; it simply provided a mechanism for the parties to reengage the trial court for the limited purpose stated in the entry. Moreover, the one-year deadline for filing a motion for relief from judgment under Civ.R. 60(B)(1)-(3) began to run the day that stipulation of dismissal was journalized—not the date the liens were resolved.

{¶ 51} We disagree with the trial court that Moccabee's second Civ.R. 60(B) motion—filed under Civ.R. 60(B)(5)—was barred by the doctrine of res judicata. The trial court had not yet ruled on Moccabee's first Civ.R. 60(B) motion when she filed her second Civ.R. 60(B) motion, therefore, there was no prior final, valid decision on the merits, and res judicata did not bar Moccabee's second motion. We, therefore, find Moccabee's second assignment of error well-taken. We nevertheless affirm the trial

21.

court judgment because we agree with its conclusion that Moccabee failed to set forth operative facts in support of her contention that USAA fraudulently induced her into settling her claims. Accordingly, the trial court reached the correct conclusion, albeit for incorrect reasons.

{¶ 52} We affirm the January 4, 2021 judgment of the Lucas County Court of Common Pleas because Moccabee is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J. _____

Christine E. Mayle, J. _____

Myron C. Duhart, J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.